**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-13-1421-KuBlPa |
| | CC-13-1466-KuBlPa |
| JOAN BORSTEN VIDOV and OLEG VIDOV, | (consolidated appeals) |
| Debtors. | Bk. No. 11-22121 |
| | Adv. No. 12-01017 |
| SOFIA MARSHAK, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| JOAN BORSTEN VIDOV; OLEG VIDOV, | |
| Appellees. | |

Argued and Submitted on June 26, 2014
at Pasadena, California

Filed – July 31, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe, Bankruptcy Judge, Presiding

Appearances: Marc Y. Lazo of Wilson Harvey Browndorf LLP argued for appellant Sofia Marshak; Carlos Singer argued for appellees Joan Borsten Vidov and Oleg Vidov.

Before: KURTZ, BLUMENSTIEL[**] and PAPPAS, Bankruptcy Judges.

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**]The Honorable Hannah L. Blumenstiel, Bankruptcy Judge for the Northern District of California, sitting by designation.

**INTRODUCTION**

Appellant Sofia Marshak[1] entered into a settlement agreement with the debtors Joan Borsten-Vidov and Oleg Vidov. Pursuant to the settlement agreement, the Vidovs paid $250,000 to Marshak and her father. In exchange, Marshak conveyed to the Vidovs all of her ownership interests in the businesses and real property jointly owned by the parties. Marshak also released both the Vidovs and the businesses from any claims arising out of any matter or thing that occurred before the entry into the settlement agreement.

Apparently unhappy with the results of the settlement agreement and with the Vidovs' post-settlement conduct, Marshak first sued the Vidovs in state court and later sued them in the bankruptcy court, stating claims under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).[2] The bankruptcy court granted summary judgment in favor of the Vidovs, and Marshak appealed.

Because most of the alleged misrepresentations, concealment and other misconduct Marshak complains of concern claims that Marshak as a matter of law released, we conclude that Marshak would not be able to establish at trial all of the elements for an exception to discharge under either § 523(a)(2)(A) or

[1]Sofia Marshak is sometimes referred to in the record as Sonia Marshak. For ease of reference, we refer to her herein simply as Marshak.

[2]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure. All Civil Rule references are to the Federal Rules of Civil Procedure, and all Evidence Rule references are to the Federal Rules of Evidence.

2

§ 523(a)(6). To the extent that the alleged misrepresentations, concealment and other misconduct Marshak complains of do not concern claims that Marshak released, the summary judgment record establishes that Marshak did not offer any evidence from which a rational trier of fact could find critical elements necessary to support Marshak's nondischargeability claims.

Accordingly, we AFFIRM the bankruptcy court's summary judgment ruling.

**FACTS**

For a time, Marshak, the Vidovs and others jointly owned several businesses and a parcel of residential real property on which some of those businesses were operated. The main business was a drug abuse rehabilitation clinic. The parties purchased real property on Corral Canyon Road in Malibu, California to serve as the site of their clinic and formed a California limited liability company, known as Corral Canyon Holdings, LLC ("Holdings"), to hold title to the real property. After they purchased the real property, Marshak and the Vidovs jointly executed a grant deed conveying the real property to Holdings. That grant deed was recorded on December 19, 2007, in the Official Records of Los Angeles County, as Instrument Number 20072784253.

A brush fire caused significant damage to the real property, but the parties had fire insurance coverage, so they made claims against the insurance policy based on their fire-related losses. Subsequently, a number of disagreements arose regarding the management and finances of the businesses. In February 2009, the parties entered into a settlement agreement, which the parties

3

intended to resolve all of their differences regarding the companies, their finances, their operations, their assets and their liabilities. For the most part, the events leading up to the parties' disputes are not relevant to this appeal. On the other hand, the settlement is pertinent to our resolution of this appeal, so we examine it in detail.

With a few limited exceptions not relevant here, Marshak and her father conveyed all of their interests in the businesses to the Vidovs in exchange for cash payments in the aggregate amount of $250,000. These conveyances included the assignment of their membership interests in Holdings. In a written assignment document, which is attached to the settlement agreement, Marshak conveyed all of her interest in Holdings and all of her interest in the "income, profits, distributions, rights, capital, and assets" of Holdings. The principal asset of Holdings was the real property. To the extent Marshak might have retained any direct interest in the real property after her execution and the recording of the 2007 grant deed, she conveyed that interest to Holdings by quitclaim deed at the time of the settlement.

The settlement agreement also contained general release provisions. Of particular importance, Marshak released the Vidovs and their businesses "from any and all claims, demands, actions, causes of action . . . damages, obligations and liabilities of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected," that Marshak "can, shall or may have" against the Vidovs and their businesses "arising out of . . . any matter . . . or thing whatsoever from the beginning of time to the date of this agreement." Settlement Agreement

4

(Feb. 6, 2009) at ¶ 14.1.[3]

At the same time, the settlement excepted from the coverage of the general release any obligations the Vidovs owed to Marshak arising from the settlement itself, including but not limited to the Vidov's promise to indemnify Marshak for any "Damages" (as defined in the agreement) Marshak may incur as a result of any breach of any debts or obligations of any of the businesses, including but not limited to those debts and obligations listed in schedules 3.4 or 6.2. Among the scheduled debts and obligations were a $1.95 million mortgage loan from Washington Mutual Bank that helped finance the parties' purchase of the real property, and a $395,000 line of credit the parties also took out against the property.

In spite of the settlement agreement attempting to resolve all of their differences, it was not long before trouble arose once again. In early 2011, Marshak and her father sued the Vidovs and their businesses in the Los Angeles County Superior Court (Case No. BC462013) alleging breach of the settlement agreement and misappropriation of trade secrets.

Shortly thereafter, the Vidovs commenced their chapter 11 bankruptcy case, and Marshak filed her nondischargeability complaint against them in January 2012. The operative pleading, Marshak's second amended complaint, stated claims for relief

[3]The settlement agreement also contained a provision in which Marshak explicitly agreed that her release covered unknown claims, as well as a standard form waiver of Marshak's rights under Cal. Civil Code § 1542. The unknown claims provision also contained an acknowledgment by Marshak that she had not relied on any representations, warranties or promises not expressly set forth in the settlement agreement.

5

based on §§ 523(a)(2)(A) and (a)(6). As alleged in the complaint, Marshak accused the Vidovs of lying to her about the fire insurance proceeds, of concealing when and how much in proceeds they received from the insurer, and of misappropriating the insurance proceeds. Marshak further accused the Vidovs of misappropriating the loan proceeds from the $395,000 line of credit and of deliberately ruining her credit rating by not paying the $1.95 million mortgage.

The Vidovs filed a summary judgment motion. In relevant part, the Vidovs asserted that all of the alleged misrepresentations, omissions and other conduct were not actionable under either § 523(a)(2)(A) or § 523(a)(6) as a result of the the terms of the settlement agreement.

In her opposition to the summary judgment motion, Marshak in essence explained that, based on her personal understanding of and personal intent regarding the settlement agreement, she expected that her exception to discharge claims survived both the releases and the rights and interests she conveyed to the Vidovs. In addition, Marshak interposed literally hundreds of evidentiary objections to the declarations and documents the Vidovs had offered in support of their summary judgment motion.

Without holding a hearing, the bankruptcy court granted the Vidovs' summary judgment motion by order entered August 14, 2013. The bankruptcy court cited multiple fatal defects in Marshak's exception to discharge claims. Among other things, the bankruptcy court generally agreed with the Vidovs' argument that most of the claims could not be reconciled with the terms of the settlement agreement.

6

As for Marshak's evidentiary objections, the bankruptcy court held that both parties had adequately authenticated the settlement agreement. And as for the remainder of the objections, the bankruptcy court summarily overruled all of them as either relating to non-essential matters or because they really constituted legal argument going to the merits of the dispute, which the court stated it had dealt with elsewhere to the extent necessary to resolve the dispute.

Marshak filed two notices of appeal from the bankruptcy court's summary judgment ruling, and this Panel consolidated those two appeals by order entered October 7, 2013.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I), and we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err when it granted summary judgment in favor of the Vidovs?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's decision to grant summary judgment. Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009). We may affirm on any ground supported by the record. Cal. Franchise Tax Bd. v. Kendall (In re Jones), 657 F.3d 921, 924 (9th Cir. 2011). In addition, we must ignore harmless error. Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 355 (9th Cir. BAP 2012).

## DISCUSSION

Much of this appeal hinges on Marshak's assertions regarding

7

the fire insurance proceeds.  In essence, Marshak asserts that the Vidovs misappropriated the insurance proceeds, that they lied to her about the amount and their use of the insurance proceeds, and that they concealed the true facts regarding the insurance proceeds.

All of these assertions are based upon a false premise – that Marshak retained a personal right to receive from the Vidovs a portion of the insurance proceeds.  Marshak claims that her personal right to receive a portion of the insurance proceeds arose from three things: (1) the fact that she was named as one of the insureds on the fire insurance policy; (2) the fire itself and the losses incurred; and (3) the fact that the Vidovs were obligated to send her a portion of the insurance proceeds upon receipt.  According to Marshak, the Vidovs' obligation to send her a portion of the insurance proceeds upon receipt is evidenced by certain 2007 and 2008 emails between her and Ms. Vidov.  In these emails, Marshak expressed her expectation that the Vidovs would send her a portion of the insurance proceeds as soon as the Vidovs received the insurance proceeds from the insurance company.

For purposes of this appeal, we will assume the truth of the facts that Marshak relies upon in support of her insurance proceeds claim.  Even if these facts are true, however, Marshak released her insurance proceeds claim as a result of the release she gave the Vidovs in the settlement agreement.

In construing the settlement agreement, we apply California law because the settlement agreement contained a choice of law provision specifying that the agreement would be governed by and

8

construed and enforced in accordance with California law. See Veal v. Am. Home Mortg. Serv., Inc. (In re Veal), 450 B.R. 897, 906, 918 (9th Cir. BAP 2011) (applying Illinois law because the subject agreement involved in the dispute – a mortgage – contained a choice of law provision making Illinois law applicable).

Under California law, the fundamental purpose of contract interpretation is to give effect to the mutual, objective intent of the parties as manifested in the parties' contract. Bank of the West v. Super. Court, 2 Cal. 4th 1254, 1264 (1992); Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., 109 Cal. App. 4th 944, 954, 956 (2003). Interpretation of the contract is a question of law when that interpretation is based on the clear and explicit language of the contract itself, or when uncontroverted extrinsic evidence is considered as an aid in interpreting the contract. See United States v. 1.377 Acres of Land, 352 F.3d 1259, 1264 (9th Cir. 2003) (citing California law); see also Newport Beach Country Club, Inc., 109 Cal. App. 4th at 955 ("When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract.").

The release in the settlement agreement is a general release and is broadly worded. On its face, the release covers all claims and debts, of any nature whatsoever, that Marshak "can, shall, or may have" against the Vidovs or their companies "by reason of, arising out of, or which may hereafter be claimed to arise out of . . . any matter, cause, or thing whatsoever from

9

the beginning of time to the date of the [settlement agreement]." The facts on which Marshak relies in support of her insurance proceeds claim all pre-date the settlement agreement (the insurance coverage, the fire losses, and her understanding regarding the Vidovs' obligations concerning the proceeds). Indeed, in her opposition papers and on appeal, Marshak has admitted that her expectation regarding the insurance proceeds already existed at the time she entered into the settlement agreement. Consequently, Marshak released her insurance proceeds claim as part of the settlement.[4]

We acknowledge that the Vidovs received some of the insurance proceeds before the settlement agreement was entered into and received some of them afterwards. This fact does not change our analysis. That Marshak's insurance proceeds claim had not fully and completely matured at the time of the settlement does not change the fact that all of the circumstances on which the claim itself was based (the insurance coverage, the fire losses, and Marshak's understanding regarding the Vidovs' obligations concerning the proceeds) all existed before the

[4]To the extent Marshak contends that, by entering into the settlement, she did not personally intend to release her claim to a portion of the insurance proceeds, this intention does not improve Marshak's case. Marshak never offered any evidence indicating that she ever expressed this intent as part of the settlement documentation or during the settlement negotiations. As a result, her undisclosed private intent regarding not releasing her claim to a portion of the insurance proceeds cannot be considered in construing the contract. See Newport Beach Country Club, Inc., 109 Cal. App. 4th at 956, 960 (holding that extrinsic evidence regarding a party's private undisclosed intent was immaterial in construing a contract under California contract law, which adheres to the objective theory of contracts).

10

parties executed the settlement.

Even if we had any doubt (which we do not) regarding the scope of the release and whether the parties expressed an objective intent for the release to cover Marshak's insurance proceeds claim, the Vidovs presented extrinsic evidence demonstrating: (1) that Marshak was aware of the insurance proceeds claim at the time she negotiated the settlement; and (2) that Marshak manifested an intent for the settlement to cover the insurance proceeds claim. This extrinsic evidence consisted of paragraph 4 of the declaration of Robert L. Lawrence and exhibit C attached thereto. Exhibit C was an emailed copy of a letter dated January 25, 2009, from Marshak's counsel to the Vidovs' counsel (Lawrence) regarding the then-pending settlement between Marshak and the Vidovs. In relevant part, on page 4 of exhibit C, Marshak's counsel advised the Vidovs' counsel of a dispute regarding the amount of insurance proceeds already received by the Vidovs and further expressed concern regarding the Vidovs' potential future receipt of additional insurance proceeds. This discussion of the insurance proceeds was set forth in a section of the January 25, 2009 letter explicitly dedicated to "the consequences of [the Vidovs'] failing to accept [Marshak's settlement] offer."

The only rational interpretation of this extrinsic evidence is that Marshak anticipated releasing any claim with respect to the insurance proceeds as part of the settlement agreement. Moreover, this extrinsic evidence is consistent with the plain, broad language of the general release.

This extrinsic evidence was uncontroverted, and was relevant

11

and admissible for the purpose of interpreting the settlement agreement. See Newport Beach Country Club, Inc., 109 Cal. App. 4th at 953-58 (holding that extrinsic evidence could be used to help determine the meaning of an integrated contract, provided that the extrinsic evidence "is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."); see also Headlands Reserve, LLC v. Ctr. for Natural Lands Mgmt., 523 F.Supp. 2d 1113, 1117, 1119, 1127 & n.6 (C.D. Cal. 2007) (holding that extrinsic evidence offered to prove a meaning to which a fully integrated contract was reasonably susceptible could be considered in interpreting a contract under California law).

Marshak contends on appeal that the bankruptcy court should have excluded the copy of the settlement agreement attached as an exhibit to the Vidovs' summary judgment papers. According to Marshak, the attached copy of the settlement agreement was unauthenticated and violated the best evidence rule. See Evidence Rules 901 and 1002. These arguments are spurious. In both her opposition papers and on appeal, Marshak relied on precisely the same copy of the settlement agreement to which she raised authenticity and best evidence objections. Hence, these evidentiary objections do not reflect a genuine concern as to whether the copy of the agreement offered into evidence was authentic and accurate; rather, they reflect an attempt to prevail on summary judgment on an evidentiary technicality. "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."

12

Evidence Rule 1003 (emphasis added). Accord, United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

Put another way, Marshak conceded away her authenticity and best evidence objections by citing to and relying upon the same copy of the settlement agreement to support her appeal and her summary judgment opposition. See generally Alexander Dawson, Inc. v. NLRB, 586 F.2d 1300, 1302-03 (9th Cir. 1978) (holding that appellant effectively conceded that certain exhibits were authentic); Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 69-70 (9th Cir. BAP 1998) (appellant's admissions regarding contents of writing satisfied any concerns arising from the best evidence rule).[5]

Marshak also contends that the February 6, 2009 settlement agreement, and the January 25, 2009 email letter to Robert Lawrence, were confidential settlement communications and that the bankruptcy court should have excluded them based on Evidence Rule 408. Generally speaking, Evidence Rule 408 excludes evidence related to settlements and compromises to the extent the proponent seeks to offer the evidence to prove or disprove the validity or the amount of the claim underlying the settlement or compromise.

Marshak's reliance on Evidence Rule 408 is misplaced. It is well established that this rule does not exclude evidence related

---

[5]In her opposition papers, Marshak promised to provide to the bankruptcy court, under seal, the original settlement agreement. But there is nothing in the record indicating that Marshak followed through and actually provided the original settlement agreement or any other documents, under seal or otherwise.

13

to a settlement when it is offered for the purposes of interpreting or enforcing the settlement.  See Advisory Committee Notes accompanying 2006 amendments to Evidence Rule 408 (citing Coakley & Williams v. Structural Concrete Equip., 973 F.2d 349, 353-54 (4th Cir. 1992)); see also Cates v. Morgan Portable Bldg. Corp., 780 F.2d 683, 691 (7th Cir. 1985) ("Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement.").

    Marshak raised one additional evidentiary objection to both the February 6, 2009 settlement agreement and the January 25, 2009 email letter to Robert Lawrence.  Marshak contended that these documents were inadmissible because they contain hearsay statements that the Vidovs offered to prove the truth of the matter asserted.  Marshak's hearsay objections cited Evidence Rule 802, but they did not give any guidance as to which particular statements in the documents were implicated by this rule.  This lack of specificity would have made it difficult if not impossible for the bankruptcy court to meaningfully rule upon these objections, except in some sort of general and summary fashion.  Nor did Marshak provide us with any greater specificity when she pressed these evidentiary objections on appeal.  By itself, this absence of specificity would permit us to conclude that she has forfeited these objections on appeal.  Christian Legal Soc'y v. Wu, 626 F.3d 483, 487-88 (9th Cir. 2010) ("We review only issues [that] are argued specifically and distinctly in a party's opening brief."); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) (same).

14

Even if we were to attempt some sort of review of Marshak's hearsay objections, they appear meritless on their face. Many of the statements in both documents would qualify as opposing party admissions, which are explicitly excluded from the definition of hearsay. See Evidence Rule 801(d)(2). To the extent they do not qualify as party admissions, the statements contained in the settlement and in the settlement negotiation letter generally were not offered to prove the truth of any particular out-of-court statement; rather, the documents were offered to prove the terms and scope of the parties' settlement, which by Marshak's own admission were set forth therein. Consequently, these settlement documents can speak for themselves, and any question regarding their accuracy or authenticity was not a matter of concern under the rule against hearsay. See generally United States v. Earle, 488 F.3d 537, 545 (1st Cir. 2007) (stating that an authenticated document can speak for itself when it is available to be examined in the court proceedings). Furthermore, as we already have concluded above, Marshak's objections regarding accuracy and authenticity were not genuine.

Accordingly, we reject all of the evidentiary objections that Marshak raised in response to the February 6, 2009 settlement agreement and the January 25, 2009 email letter to Robert Lawrence. Moreover, because Marshak's other evidentiary objections would not and could not alter our analysis and resolution of this appeal, any error of the bankruptcy court with regard to these other evidentiary objections was harmless. See In re Mbunda, 484 B.R. at 355.

Marshak further complains that the bankruptcy court applied

15

the incorrect legal standard in granting summary judgment against her. Having reviewed the entirety of bankruptcy court's ruling, we have not found any reversible error with respect to the summary judgment standards the bankruptcy court applied. Nonetheless, because we review summary judgment rulings de novo, we will recite the general law applicable to summary judgment proceedings, and we will then conduct our own application of that law to the circumstances of this case.

Summary judgment is appropriate when there are no genuine issues of material fact, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Civil Rule 56 (made applicable in adversary proceedings by Rule 7056); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Material facts that would preclude summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All facts genuinely in dispute must be viewed "in the light most favorable to the non-moving party." Scott v. Harris, 550 U.S. 372, 380 (2007). And all reasonable inferences that can be drawn in the non-moving party's favor must be so drawn. Id. at 378.

Civil Rule 56 "mandates" that a trial court enter summary judgment when, after adequate opportunity for discovery, the adverse party fails to present evidence in response to a summary judgment motion sufficient to establish the existence of an essential element of that party's case, on which that party would bear the burden of proof at trial. Celotex, 477 U.S. at 323. As

16

the Supreme Court in Celotex explained, "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23.

Marshak strenuously argues that, on summary judgment, the burden is on the movant to demonstrate that it is entitled to summary judgment. This much is true. But Marshak ignores the fact that the Vidovs could satisfy their summary judgment burden simply by identifying those portions of the record which demonstrated the absence of a genuine issue of material fact as to one or more elements on which Marshak would bear the burden of proof at trial. Id. For summary judgment purposes, "[a]n issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." Far Out Productions, Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001) (emphasis added).

The Vidovs met their summary judgment burden here by pointing to the February 6, 2009 settlement agreement and the January 25, 2009 email letter to Robert Lawrence and explaining how these documents negated essential elements of Marshak's claims. See Celotex, 477 U.S. at 323.

In sum, even though Marshak was the non-moving party in the summary judgment proceedings, because she would bear the ultimate burden of proof at trial to establish all of the elements necessary to support her nondischargeability claims, she needed to make a showing sufficient to establish genuine issues of fact with respect to those elements in order to survive the Vidovs'

17

summary judgment motion. Id.

In order to prevail at trial on her § 523(a)(2)(A) exception to discharge claim, Marshak needed to prove by a preponderance of the evidence the following five elements: (1) that the debtor made material misrepresentations; (2) that the debtor knew the misrepresentations were false at the time they were made; (3) that the debtor made the misrepresentations with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such misrepresentations; and (5) that the creditor sustained a loss or injury as a proximate result of the misrepresentations having been made. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010); see also Field v. Mans, 516 U.S. 59, 67-68 (1995) (explaining that § 523(a)(2)(A) requires, among other things, intent, reliance and materiality); Citibank (South Dakota) N.A. v. Lee (In re Lee), 186 B.R. 695, 697-98 (9th Cir. BAP 1995).

Here, in light of our construction of Marshak's release as covering any entitlement of hers with respect to the insurance proceeds, and in light of the uncontroverted fact that Marshak transferred to the Vidovs all of her ownership interests with respect to the real property and Holdings, the Vidovs had no further obligation to Marshak on account of the insurance proceeds once the parties entered into the settlement agreement. As a result, none of the alleged misrepresentations, concealment or other misconduct concerning the insurance proceeds that Marshak emphasizes in her opening appeal brief could have constituted a material misrepresentation or a material concealment for purposes of § 523(a)(2)(A). See In re Tallant,

18

218 B.R. at 68 n.14 (indicating that a concealment of facts is material for purposes of § 523(a)(2)(A) only if the concealment pertained to some right or interest of the creditor). In the same vein, the conduct complained of could not have proximately caused Marshak to suffer any loss, injury or damages within the meaning of § 523(a)(2)(A).

To the extent Marshak asserts that the Vidovs' alleged misappropriation of the insurance proceeds constituted a debt arising from a willful and malicious injury, that assertion similarly is meritless. Even if we were to assume for summary judgment purposes all of the other elements for an exception to discharge under § 523(a)(6), the summary judgment record demonstrated that Marshak would not be able to prove that the Vidovs' alleged wrongful acts concerning the insurance proceeds caused her any injury. In light of the settlement and the broad terms of Marshak's release, Marshak could not possibly demonstrate any injury from these acts because she relinquished any interest in or entitlement to the insurance proceeds. Unless the willful and malicious conduct leads to injury or damages, there can be no exception to discharge under § 523(a)(6). See Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010) ("A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." (Emphasis added)).

Marshak briefly mentions in her opening appeal brief a few other instances of alleged misconduct, unconnected to her insurance proceeds claim. She argues that these other instances

19

of alleged misconduct independently justify an exception to discharge. Each of these arguments lacks merit. In one instance, Marshak contends that, after the settlement agreement was entered into, the Vidovs lied to her about attempting to negotiate a refinancing of the $1.95 million mortgage, for which Marshak was still liable to the bank. Marshak further contends that this so-called refinancing actually was a loan modification that potentially could have increased her continuing liability on the mortgage. However, in the same paragraph, Marshak admits that she did not believe the Vidovs and that she successfully prevented the loan modification from occurring. Under these facts as admitted by Marshak, there was no reliance and no damages, so there could not have been a viable § 523(a)(2)(A) claim arising therefrom.

In another instance, Marshak contends that the Vidovs falsely promised in the settlement agreement, without any intent to actually perform, that they were going to timely pay the $1.95 million mortgage, so as to prevent any harm to Marshak's credit rating. The only evidence Marshak cites in support of this contention is her own declaration, which states in relevant part:

> In January of 2011, I also learned that the Vidovs deliberately destroyed my credit, by failing to pay the mortgage on the Coral Canyon property, as they agreed under the Settlement Agreement.

Marshak Decl. (April 25, 2013) at ¶ 19.

During our review of the settlement agreement and the attached settlement documentation, we found no indication that the Vidovs ever made a promise that they would timely pay the mortgage so as to prevent any harm to Marshak's credit rating.

20

To the contrary, the settlement agreement provides for potential defaults on the mortgage not by prohibition but instead by indemnification.

As we already have explained, Marshak's subjective undisclosed intentions regarding what she hoped to get out of the settlement are immaterial for purposes of construing what the parties actually agreed to. See Newport Beach Country Club, Inc., 109 Cal. App. 4th at 956, 960. There was no evidence in the summary judgment record indicating that Marshak ever disclosed her expectation that the Vidovs would not default on the mortgage and would not thereby damage her credit rating. Consequently, there was no evidence of this promise for purposes of Marshak's § 523(a)(2)(A) claim.[6]

The final instance of alleged misconduct that Marshak addresses in her appeal brief concerns the Vidovs' alleged misappropriation of the $395,000 line of credit. It is difficult to tell from Marshak's papers when she contends this alleged misappropriation occurred. In any event, regardless of the precise timing of this alleged misappropriation, this contention also is meritless. To the extent Marshak claims that this misappropriation occurred before she entered into the settlement agreement, she released any claim in connection therewith. And

---

[6]As a separate and independent basis for rejecting this particular contention, any alleged harm to Marshak's credit rating resulting from the Vidovs' alleged false promise to keep current on the $1.95 million mortgage likely is not actionable under either § 523(a)(2)(A) or § 523(a)(6). See Cromer v. Cromer (In re Cromer), 164 B.R. 680, 682-83 (Bankr. M.D. Fla. 1994) (rejecting similar exception to discharge claims based on similar conduct of the debtor).

21

to the extent Marshak claims that this misappropriation occurred after the settlement agreement was entered into, she ceased to have any interest in or entitlement to say how the Vidovs and their businesses should have used the line of credit.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's summary judgment in favor of the Vidovs.