**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JENNY LISETTE FLORES, et al., *Plaintiffs-Appellees*, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General; KEVIN K. MCALEENAN, Acting Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION, *Defendants-Appellants.* | No. 17-56297 <br><br> D.C. No. 2:85-cv-04544-DMG-AGR <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted June 18, 2019
San Francisco, California

Filed August 15, 2019

Before:  A. Wallace Tashima, William A. Fletcher,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

### Immigration / Juvenile Detention

The panel dismissed for lack of jurisdiction an appeal brought by the Department of Homeland Security and its component agencies of the district court's June 2017 order granting in part the motion of a plaintiff class to enforce a 1997 Settlement Agreement with the government which set a nationwide policy for the detention, release, and treatment of minors detained in Immigration and Naturalization Service custody.

In 1997, the United States entered into a settlement with a class of minors subject to detention by U.S. immigration authorities. The Settlement Agreement, incorporated into a consent decree, requires immigration agencies to hold such minors in their custody "in facilities that are safe and sanitary." The Agreement also requires the government to treat these "minors in its custody with dignity, respect, and special concern for their particular vulnerability as minors."

Plaintiffs filed a motion in district court to enforce the Agreement. The district court found that the government was violating the Agreement by detaining minors in unsanitary and unsafe conditions at Border Patrol stations. These findings were based on evidence that minors in U.S. Customs and Border Protection custody were held in conditions that deprived them of sleep and did not provide adequate access to food, clean water, and basic hygiene

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

items. The court also found that the government was violating the Agreement by failing to consider minors for release as specified in the Agreement and by detaining minors in detention facilities not licensed for the care of minors. The district court ordered "enforced" various paragraphs of the Agreement and also directed the government to appoint an internal "Juvenile Coordinator," as contemplated by the Agreement, to monitor the government's compliance with the Agreement and report to the court.

The parties agreed that this court has jurisdiction over the appeal of this post-judgment order only if it modified the Agreement.

The government argued that the district court's order did modify the Agreement by requiring the government to provide specific hygiene items and adequate sleeping accommodations not explicitly listed in the text of the Agreement. The panel held that the district court's order did not modify the Agreement, but instead interpreted the Agreement's requirement that minors be held in "safe and sanitary" conditions "consistent with the [government's] concern for the particular vulnerability of minors."

The government also argued that the district court modified the Agreement by concluding that it requires the government to consider releasing class members subject to expedited removal. The government contended that this interpretation of the Agreement was inconsistent with the Immigration and Nationality Act and related regulations—primarily with the expedited removal provisions, which provide that noncitizens in expedited removal proceedings "shall be detained for further consideration of the[ir] application[s] for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

The panel held that, rather than modifying the Agreement, the district court appropriately interpreted it as consistent with both the INA and this court's prior interpretation of the Agreement.

Regarding the government's argument that the district court erred in concluding that the Agreement prohibits the government from detaining minors in secure, unlicensed family detention centers, the panel noted that the district court addressed this issue directly in its earlier July 2015 order, and that although the government appealed that order, it did not on appeal challenge the district court's holding on this issue. The panel concluded that this issue belatedly raised in this appeal was not properly before the court.

Because the panel concluded that the district court's order did not modify the Agreement, it dismissed the appeal.

---

## COUNSEL

Sarah Fabian (argued), Senior Litigation Counsel; William C. Silvis, Assistant Director, District Court Section; William C. Peachey, Director, District Court Section; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellants.

Peter Anthony Schey (argued) and Carlos R. Holguin, Center for Human Rights and Constitutional Law, Los Angeles, California; Elena Garcia, Orrick Herrington & Sutcliffe LLP, Los Angeles, California; Michael S. Sorgen, La Raza Centro Legal Inc., San Francisco, California; Jennifer Kelleher Cloyd, Katherine H. Manning, and Annette Kirkham, The Law Foundation of Silicon Valley

Legal Advocates for Children and Youth Public Interest Law Firm, San Jose, California; for Plaintiff-Appellee.

## OPINION

BERZON, Circuit Judge:

In 1997, the United States entered into a settlement with a class of minors subject to detention by U.S. immigration authorities ("Plaintiffs"). The settlement agreement, incorporated into a consent decree, requires immigration agencies to hold such minors in their custody "in facilities that are safe and sanitary." *Flores* Agreement ("the Agreement") at ¶ 12A. The Agreement also requires the government to treat these "minors in its custody with dignity, respect, and special concern for their particular vulnerability as minors." *Id*. at ¶ 11.

This appeal began as a motion by the Plaintiffs to enforce the Agreement. The district court found that the government was violating the Agreement by detaining minors in unsanitary and unsafe conditions at Border Patrol stations. These findings were based on evidence that minors in U.S. Customs and Border Protection custody were held in conditions that deprived them of sleep and did not provide adequate access to food, clean water, and basic hygiene items. The court also found that the government was violating the Agreement by failing to consider minors for release as specified in the Agreement and by detaining minors in detention facilities not licensed for the care of minors. The district court ordered "enforced" various paragraphs of the Agreement and also directed the government to appoint an internal "Juvenile Coordinator," as contemplated by the Agreement, to monitor the

government's compliance with the Agreement and report to the court.

The parties agree that this court has jurisdiction over the appeal of this post-judgment order only if it modified the Agreement. The government argues that the district court's order did modify the Agreement by requiring the government to provide specific hygiene items and adequate sleeping accommodations not explicitly listed in the text of the Agreement. We disagree. The district court's order does not modify the Agreement. Instead, it interprets the Agreement's requirement that minors be held in "safe and sanitary" conditions "consistent with the [government's] concern for the particular vulnerability of minors." *See* Agreement at ¶ 12A. The government also argues that the district court's order modifies the Agreement in other respects, but those arguments likewise lack merit. As the district court's order did not modify the Agreement we dismiss the appeal.

# I

## A

This case stems from a 1985 lawsuit filed on behalf of a class of minors detained by U.S. immigration authorities. After considerable litigation, the parties negotiated the Agreement; it was entered by the district court as a consent decree in January 1997. The Agreement remains in effect today.[1] The Agreement "sets out nationwide policy for the

---

[1] The Agreement included a specified termination date, but in 2001 the parties stipulated to extend the Agreement until "45 days following defendants' publication of final regulations implementing this Agreement." The government has issued proposed regulations but the regulations have not been made final. *See* Apprehension, Processing,

detention, release, and treatment of minors in the custody of the INS." *Id.* at ¶ 9.[2] It requires the government to "place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-being and that of others." *Id.* at ¶ 11. The Agreement's provisions "create[] a presumption in favor of releasing minors and require[] placement of those not released in licensed, non-secure facilities that meet certain standards." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016).

Under paragraph 12A of the Agreement, "[f]ollowing arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors." The Agreement continues: "Facilities will provide access to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to

---

Care, and Custody of Alien Minors and Unaccompanied Alien Children, 83 Fed. Reg. 45,486 (proposed Sept. 7, 2018) (to be codified at 8 C.F.R. §§ 212, 236; 45 C.F.R. § 410); *see also Apprehension, Processing, Care, and Custody of Alien Minors*, Regulations.gov, https://www.regulations.gov/docket?D=ICEB-2018-0002 (last visited Aug. 6, 2019).

[2] Although the Agreement's terms refer to "INS," the Immigration and Naturalization Service's obligations under the Agreement now apply to the Department of Homeland Security and the Department of Health and Human Services. *See Flores v. Sessions*, 862 F.3d 863, 870 (9th Cir. 2017).

protect minors from others, and contact with family members who were arrested with the minor."

Within a few days of initial detention—three days if a suitable detention facility "is located and has space available" or five days "in all other cases"—the government ordinarily must choose between two options for placement of minors.[3] The first, and preferable, option, discussed in paragraph 14 of the Agreement, is releasing the minor to a parent, legal guardian, adult relative, or another "capable and willing" designated adult. Alternatively, under paragraph 19, the minor may be placed in a facility "licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children." Licensed facilities must be "non-secure as required under state law."

Finally, paragraph 28A provides that "[a]n INS Juvenile Coordinator . . . shall monitor compliance with the terms of this Agreement and shall maintain an up-to-date record of all minors who are placed in proceedings and remain in INS custody for longer than 72 hours."

---

[3] Paragraph 21 of the Agreement provides a third option—placement in a secure juvenile detention facility—in limited circumstances, such as where the minor has been charged with a crime. Although the Agreement contemplates secure detention for minors that are "an escape-risk," the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") limits the use of secure custody, stating that "[a] child shall not be placed in a secure facility absent a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense." 8 U.S.C. § 1232(c)(2)(A); *see also Flores v. Sessions*, 862 F.3d at 881 n.19.

## B

In May 2016, the plaintiffs filed a motion to enforce the Agreement. The plaintiffs alleged that despite earlier such motions and resulting orders enforcing the Agreement, the government continued to violate it by detaining class members in unsafe and unsanitary conditions at Border Patrol stations and by detaining minors in secure, unlicensed facilities. The plaintiffs requested that the district court address these violations by appointing an independent monitor.

In June 2017, after an evidentiary hearing, the district court granted in part plaintiffs' motion to enforce. In its order ("the Order"), the court found that the government was violating the Agreement's express requirements to provide adequate access to appropriate food and water and "adequate temperature controls at a reasonable and comfortable range." The court further found that although the Agreement "makes no mention of the words 'soap,' 'towels,' 'showers,' 'dry clothing,' or 'toothbrushes,' . . . these hygiene products fall within the rubric of the Agreement's language requiring 'safe and sanitary' conditions." Certain Border Patrol stations, the district court found, were violating paragraph 12A of the Agreement by failing to provide such sanitary necessities.

The district court also determined that although "the word 'sleep' does not appear in the Agreement, . . . whether Defendants have set up conditions that allow class members to sleep in the [Border Patrol] facilities is relevant to the issue of whether they have acted in a manner that is consistent with 'the INS's concern for the particular vulnerability of minors' as well as the Agreement's 'safe and sanitary' requirement." Citing evidence that many minors in Border Patrol custody are forced to sleep on concrete floors,

with no bedding aside from pieces of thin polyester foil, and are subjected to cold temperatures, serious overcrowding, and constant lighting, the district court found that the government was violating the Agreement at certain Border Patrol stations by holding children in facilities that deprived them of adequate sleep.

The court also found that the government was failing to make and record ongoing efforts aimed at releasing or placing class members in violation of paragraph 14 of the Agreement, and was detaining class members in secure, unlicensed facilities in violation of paragraph 19.

The district court declined, however, to appoint an independent monitor as the plaintiffs had requested. Instead, it directed the government to identify an internal "Juvenile Coordinator" in accordance with paragraph 28A of the Agreement. The court instructed that the Juvenile Coordinator, once appointed, "will monitor compliance with those terms of the *Flores* Agreement, which this Court has found must be enforced and shall report directly to the Court regarding the status of Defendants' compliance."[4]

## II

### A

This court has appellate jurisdiction over interlocutory district court orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or

---

[4] A Special Master has since been appointed. *See* Order Appointing Special Master/Independent Monitor, *Flores v. Barr*, No. 2:85-cv-4544 (Order) (C.D. Cal. Oct. 5, 2018) (ECF No. 494). Neither the appointment of the Special Master nor the Special Master's enforcement activities is the subject of this appeal.

modify injunctions." 28 U.S.C. § 1292(a)(1). The parties agree that the district court's Order did not grant, continue, refuse, dissolve, or refuse to dissolve an injunction. The only possible basis for appellate jurisdiction therefore depends on whether the Order "modif[ied]" the Agreement. *See Thompson v. Enomoto*, 815 F.2d 1323, 1327 (9th Cir. 1987) (appointment of a special master cannot be appealed under § 1292(a)(1) unless "the interlocutory order appointing a special master 'modifies' the consent decree"); *see also Bogard v. Wright*, 159 F.3d 1060, 1064–65 (7th Cir. 1998) (dismissing for lack of jurisdiction an appeal of an order that enforced but did not modify a consent decree, and discussing the "appellate remedy" available to each party under section 1292(a)(1) with respect to orders after a final judgement).

The text of the district court's opinion in this case interpreted the existing Agreement; its operative provisions, which appear at the end of the Order, granted enforcement of various provisions of the Agreement. The conclusion of the Order reads, for example, "Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of unsanitary conditions is GRANTED . . ." The Order's operative provisions do not require the government to take any specific action other than to propose a Juvenile Coordinator for appointment.[5]

The government does not challenge the appointment of a Juvenile Coordinator, as that appointment is expressly

[5] In contrast, the district court's July 2015 order, over which this court exercised appellate jurisdiction, *see Flores v. Lynch*, 828 F.3d at 905, did direct the government to take specific actions, *see id.* at 908 ("To comply with Paragraph 14A of the Agreement and as contemplated in Paragraph 15, a class member's accompanying parent shall be released with the class member . . . .").

provided for in the Agreement. Rather, the government argues that we have jurisdiction to review other parts of the district court's Order because they modified the *Flores* Agreement.

Specifically, the government contends that, by interpreting paragraph 12A in the body of its opinion to require that Border Patrol stations provide the most basic human necessities—accommodations that allow for adequate sleep, essential hygiene items, and adequate, clean food and water—the district court modified the Agreement's requirement that minors be held in "safe and sanitary" conditions that comport with the "special concern for the particular vulnerability of minors." We emphatically disagree.

The government first suggests that the key phrases in paragraph 12A—"safe and sanitary" and "special concern for the particular vulnerability of minors"—add nothing to the enumerated specific requirements found in the next sentence of the Agreement (requiring "access to toilets and sinks, drinking water and food as appropriate," and so on). The government's brief maintains that as the enumerated conditions said nothing about, for example, allowing the children in government custody to sleep or to wash themselves with soap, reading the "safe and sanitary" requirement to cover those requirements is a modification of the Agreement rather than an interpretation of it.

That cramped understanding of paragraph 12A is untenable. Construing the Agreement as requiring only the particular conditions specifically enumerated renders both the "safe and sanitary" and the "particular vulnerability of minors" phrases wholly superfluous. We cannot accept that the parties to the Agreement included gratuitous standards that have no practical impact. "Courts interpreting the

language of contracts 'should give effect to every provision,' and 'an interpretation which renders part of the instrument to be surplusage should be avoided.'" *United States v. 1.377 Acres of Land*, 352 F.3d 1259, 1265 (9th Cir. 2003) (quoting *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 12 (Ct. App. 1989)); *see also* Restatement (Second) of Contracts § 203 (Am. Law Inst. 1981). We conclude that paragraph 12A's provisions that facilities be "safe and sanitary and . . . consistent with the INS's concern for the particular vulnerability of minors" do have independent force and can be interpreted and enforced without thereby modifying the Agreement.

The government also argues that the phrase "safe and sanitary" is so vague that either it cannot be enforced, *see* Oral Argument at 33:57–34:09, *Flores v. Barr*, No. 17-56297 (9th Cir. Jun. 18, 2019), https://www.ca9.uscourts.g ov/media/view_video.php?pk_vid=0000015907, or it leaves "the specifics of compliance [with paragraph 12A] up to" the government. Not so.

The district court's interpretation of the Agreement is consistent with the ordinary meaning of the language of paragraph 12A, which does provide a standard sufficiently clear to be enforced. The court found, among other things, that minors (1) were "not receiving hot, edible, or a sufficient number of meals during a given day," (2) "had no adequate access to clean drinking water," (3) experienced "unsanitary conditions with respect to the holding cells and bathroom facilities," (4) lacked "access to clean bedding, and access to hygiene products (i.e., toothbrushes, soap, towels)," and (5) endured "sleep deprivation" as a result of "cold temperatures, overcrowding, lack of proper bedding (i.e., blankets, mats), [and] constant lighting." After so finding, the district court concluded that these conditions fall short of

paragraph 12A's requirement that facilities be "safe and sanitary," especially given "the particular vulnerability of minors." Those determinations reflect a commonsense understanding of what the quoted language requires. Assuring that children eat enough edible food, drink clean water, are housed in hygienic facilities with sanitary bathrooms, have soap and toothpaste, and are not sleep-deprived are without doubt essential to the children's safety.[6] The district court properly construed the Agreement as requiring such conditions rather than allowing the government to decide whether to provide them.

Moreover, contrary to the government's assertions, the district court did not incorporate into the Agreement a particular set of standards, Customs and Border Protection's "National Standards on Transport, Escort, Detention, and Search" (or "TEDS"), with respect to food during detention. We doubt that the TEDS requirements—that minors "be offered a snack upon arrival and a meal at least every six hours thereafter," have food that is "in edible condition (not frozen, expired, or spoiled)," and "have regular access to snacks, milk, and juice,"—extend beyond what paragraph 12A requires. But in any event, in context, the district court referred to TEDS not to interpret the Agreement as incorporating the TEDS standards specifically, but to confirm that the government's inattention to ensuring that children were being adequately fed was egregious, as the government was not even complying with its own standards.

---

[6] We note that, as the district court properly understood, assuring "safe and sanitary" conditions includes protecting children from developing short- or long-term illnesses as well as protecting them from accidental or intentional injury.

In short, the district court's explanation of its enforcement of paragraph 12A regarding the conditions at Border Patrol stations concerned only requirements unarguably within the terms of the Agreement. As a result, the portion of the court's order enforcing paragraph 12A did not constitute an "[i]nterlocutory order[] . . . modifying [an] injunction[], or refusing to . . . modify [an] injunction[]." 28 U.S.C. § 1292(a)(1). We therefore lack jurisdiction over this claim.**[7]**

## B

The government next argues that the district court modified the Agreement by concluding that it requires the government to consider releasing class members subject to expedited removal. The government contends that this interpretation of the Agreement is inconsistent with the Immigration and Nationality Act (INA) and related regulations—primarily with the expedited removal provisions, which provide that noncitizens in expedited removal proceedings "shall be detained for further consideration of the[ir] application[s] for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

The Agreement "creates a presumption in favor of releasing minors." *Flores v. Lynch*, 828 F.3d at 901; *accord Flores v. Sessions*, 862 F.3d at 866. That presumption is fully consistent with the Act's expedited removal provisions.

To begin, not all noncitizens eligible to be placed in expedited removal proceedings are in fact placed in such

---

**[7]** As we lack jurisdiction, we do not reach the government's evidentiary objections regarding the record considered by the district court.

proceedings. The government has discretion to place noncitizens in standard removal proceedings even if the expedited removal statute could be applied to them. *See Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 521–22 (B.I.A. 2011). In other words, the government may place minors into standard, nonexpedited removal proceedings and thus comply with the Agreement by avoiding any mandatory detention allegedly required for expedited removal.

Further, expedited removal does *not* require mandatory detention for minors. The INA provides that, even for noncitizens in expedited removal, "the Attorney General may . . . in his discretion parole into the United States temporarily" any noncitizen applying for admission "under such conditions as he may prescribe." 8 U.S.C. § 1182(d)(5)(A). The government has promulgated two regulations that pertain to parole into the United States of noncitizens in expedited removal proceedings. One provides that such noncitizens "shall be detained pending determination and removal, except that parole of such alien . . . may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective." 8 C.F.R. § 235.3(b)(2)(iii). A second provides that all noncitizens subject to removal—specifically including, by cross-reference, those in expedited removal[8]—may be paroled "on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizens]

---

[8] Section 212.5(b) addresses the parole of aliens "who have been or are detained in accordance with § 235.3(b) or (c) of this chapter." 8 C.F.R. § 212.5(b). Section 235.3(b) provides for expedited removal. *Id.* § 235.3.

present neither a security risk nor a risk of absconding." *Id.* § 212.5(b). Among the groups eligible for parole under this regulation are "[a]liens who are defined as juveniles in § 236.3(a) of this chapter," who may be paroled under "the guidelines set forth in § 236.3(a) of this chapter and paragraphs (b)(3)(i) through (iii) of this section." *Id.* § 212.5(b)(3).

Both regulations expressly cover noncitizens in expedited removal proceedings; nothing in section 235.3(b) negates section 212.5(b). The more specific regulatory provision providing an exception for minors governs, not the general expedited removal provisions. *See Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1015–16 (9th Cir. 2017) (applying the interpretive canon that "the specific governs over the general" to regulations).

The upshot is that the government's own regulations contemplate that minors in expedited removal proceedings may be considered for release, just as the Agreement requires. Rather than modifying the Agreement, the district court appropriately interpreted it as consistent with both the INA and our prior interpretation of the Agreement. We therefore lack jurisdiction over this claim.[9]

---

[9] For the first time on appeal, the government contends that the district court's conclusion that the government must consider whether to release minors to potential custodians other than a parent or legal guardian conflicts with a provision of the TVPRA, 8 U.S.C. § 1232(b)(3). We decline to address this statutory defense in this appeal, as the government did not raise it before the district court. *See Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004).

## C

Finally, the government argues that the district court erred in concluding that the Agreement prohibits the government from detaining minors in secure, unlicensed family detention centers. The district court addressed this issue directly in its July 2015 order. Although the government appealed that order, it did not on appeal challenge the district court's holding on this issue. *See Flores v. Lynch*, 828 F.3d at 901. "[A] party cannot offer up successively different legal or factual theories that could have been presented in a prior request for review." *Sec. Inv'r Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996). The issue belatedly raised in this appeal is not properly before us.

## III

We dismiss the appeal for lack of jurisdiction.

**DISMISSED**.