# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00261-CV

---

**Texas Department of Family and Protective Services; Henry Whitman, in His Official Capacity as DFPS Commissioner; Texas Health and Human Services Commission; Charles Smith, in his Official Capacity as HHSC Executive Commissioner; Corrections Corporation of America; and The GEO Group, Inc., Appellants**

**v.**

**Grassroots Leadership, Inc.; Gloria Valenzuela; E. G. S., for herself and as next friend for A. E. S. G.; F. D. G., for herself and as next friend for N. R. C. D.; Y. E. M. A., for herself and as next friend for A. S. A.; Y. R. F., for herself and as next friend for C. R. R.; S. J. M. G., for herself and as next friend for J. C. M.; K. G. R. M., for herself and as next friend for A. V. R.; C. R. P., for herself and as next friend for A. N. C. P.; B. E. F. R., for herself and as next friend for N. S. V.; S. E. G. E., for herself and as next friend for G. E. A.; Leser Julieta Lopez Herrera, for herself and as next friend for A. B.; and Rose Guzman de Marquez, for herself and as next friend for D. R., Appellees**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-15-004336, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

# DISSENTING OPINION

# TO DENIAL OF EN BANC RECONSIDERATION

This case involves a challenge to a rule adopted by the Texas Department of Family and Protective Services (DFPS) that authorizes the State to issue child-care-center licenses to immigrant detention facilities in Texas known as "family residential centers" (FRCs). The FRCs are operated by private prison companies under contract with the federal government, specifically U.S. Immigration and Customs Enforcement (ICE). Appellees, who were plaintiffs

in the court below (Plaintiffs), challenged the validity of the rule on several grounds, including that the rule exceeded DFPS's statutory authority, prolonged the amount of time that children may be detained in the facilities, and allowed children to be detained in conditions that endangered their safety. Appellants, who were defendants in the court below (Defendants), filed pleas to the jurisdiction asserting that Plaintiffs lacked standing to assert their claims. The district court denied the pleas to the jurisdiction and declared the rule invalid. Defendants appealed the district court's judgment.

On September 5, 2018, the appeal was submitted on oral argument to this Court. On November 28, 2018, the Court reversed the district court's judgment and rendered judgment granting Defendants' pleas to the jurisdiction, concluding that all Plaintiffs lacked standing to assert their claims. *See Texas Dep't of Family & Protective Servs. v. Grassroots Leadership, Inc.*, No. 03-18-00261-CV, 2018 Tex. App. LEXIS 9643, at \*18 (Tex. App.—Austin Nov. 28, 2018, no pet. h.) (mem. op.). On December 14, 2018, the Court overruled Plaintiffs' motion for rehearing.

On January 11, 2019, Plaintiffs filed a motion for en banc reconsideration. Today, three of the six justices on this Court have voted to grant that motion and three have voted to deny that motion, resulting in the denial of en banc reconsideration. *See* Tex. R. App. P. 49.7 (requiring approval of majority of court before appeal may be reconsidered en banc). Because I would grant the motion, I respectfully dissent from that denial.

"En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration." Tex. R. App. P. 41.2(c). The rules do not define what constitutes "extraordinary circumstances," and courts have discretion to determine whether

2

such circumstances exist in a given case. *See Chakrabarty v. Ganguly*, 573 S.W.3d 413, 415–16 & n.4 (Tex. App.—Dallas 2019, no pet.) ("The standard set forth in Rule 41 is sufficiently broad to afford the Court the discretion to consider a case en banc 'if the circumstances require and the court votes to do so.'" (quoting *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 708 n.1 (Tex. 2003)). I agree with former Chief Justice Woodie Jones that "extraordinary circumstances" would include "addressing issues that are highly significant to the public or in which the public has a high level of interest." *Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 226 (Tex. App.—Austin 2010, no pet.) (Jones, C.J., concurring in denial of en banc reh'g).

Granting en banc reconsideration based on "extraordinary circumstances" is rare but not unprecedented. For example, in *Lawrence v. State*, 41 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd), *rev'd*, 539 U.S. 558, 579 (2003), the Houston Fourteenth Court of Appeals granted en banc reconsideration to determine whether a Texas statute criminalizing certain sexual conduct between consenting adults was facially unconstitutional. In *Rodriguez v. Cuellar*, 143 S.W.3d 251 (Tex. App.—San Antonio 2004, pet. dism'd), the San Antonio Court of Appeals, in an opinion authored by current Texas Supreme Court Justice Paul Green, granted en banc reconsideration to determine whether the trial court had jurisdiction to determine the merits of a contentious federal election contest. Both cases addressed issues of statewide and arguably national importance that were "highly significant to the public or in which the public ha[d] a high level of interest" at the time.

This case addresses state policies that affect the length and conditions of detention faced by immigrant children and their mothers in Texas. The detention of immigrant families in Texas and elsewhere has received extensive news coverage and analysis in both state and national media outlets for several years, dating back to the previous presidential administration

and intensifying during the current administration. There are few, if any, issues in which the public has shown a higher level of sustained interest. This case also touches on the relationship between state administrative law and federal immigration policy[1] and thus could have far-reaching legal and policy ramifications in future cases, both here in Texas and in other states where immigrant children may be detained.[2] Given the continued statewide and national significance of these issues, I believe it is imperative that the entire Court hears and decides this appeal.

With regard to the merits of the Court's opinion, I agree with the Court that Plaintiffs Grassroots Leadership, Inc., a non-profit organization focused on "advocating for

---

[1] The detention and treatment of minors in immigration custody is governed by the terms of the *Flores* Settlement Agreement, a court-approved settlement of a federal lawsuit filed by detained minors against the Immigration and Naturalization Service. *See Flores v. Barr*, 934 F.3d 910, 912–16 (9th Cir. 2019); *Flores v. Lynch*, 828 F.3d 898, 901–03 (9th Cir. 2016). The agreement sets strict limitations on the length of time that children may be detained in immigration facilities, generally no longer than 20 days. *See Lynch*, 828 F.3d at 901–03; *Flores v. Sessions*, 394 F. Supp. 3d 1041, 1070 (C.D. Cal. 2017). However, when ICE detains children in state-licensed facilities, this prolongs indefinitely the length of time that children may be detained. *See Lynch*, 828 F.3d at 903. Thus, declaring the DFPS rule valid or invalid could have a significant effect on federal immigration policy moving forward. As Plaintiffs observe in their brief, "The State is not a mere bystander to the federal government's policies. A license is required before the federal government can detain children longer—its stated goal. Only the State can license the facilities as child-care centers. By issuing a rule to license these facilities, the State enables the federal government to prolong children's detention under unsafe conditions."

[2] In addition to the two Texas facilities at issue in this appeal, ICE opened a third immigrant detention center in New Mexico. *See id*. at 904. Although that facility is now closed, there is another detention center located in Pennsylvania that "has been monitored and licensed by state authorities under the state standards applicable to child residential and day treatment facilities" in that state. *See id*. at 903; *see also Sessions*, 394 F. Supp. 3d at 1066–71 (discussing alleged conditions at Pennsylvania facility). If future lawsuits were to be filed in other states where immigrant children are detained, courts in those jurisdictions could look to this Court's opinion for guidance. Moreover, this Court's opinion could either encourage or discourage current and future detainees in Texas and elsewhere from filing similar lawsuits, and it could also encourage or discourage other states to adopt rules similar to the DFPS rule.

policies that reduce reliance on incarceration and detention," and Gloria Valenzuela, the owner of a child-care center located in El Paso that has no connection to the immigrant detention centers at issue in this case, lack standing to challenge the DFPS rule. *See Grassroots Leadership, Inc.*, 2018 Tex. App. LEXIS 9643, at *8–13. However, I would conclude that the Detainee Plaintiffs have standing to assert their claims.

Standing, a component of subject-matter jurisdiction, "'requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court.'" *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) (quoting *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012)). Stated another way, to have standing, "'[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id*. at 485. "As for the injury itself, it 'must be concrete and particularized, actual or imminent, not hypothetical.'" *Heckman*, 369 S.W.3d at 155.

"Our concern is with a party's right to initiate a lawsuit and the trial court's corresponding power to hear the case *ab initio*." *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993). Thus, "[s]tanding is determined at the time suit is filed in the trial court, and subsequent events do not deprive the court of subject matter jurisdiction." *Id*. In determining whether a plaintiff has standing, "[w]e construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman*, 369 S.W.3d at 150 (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

The Detainee Plaintiffs consist of eleven mothers and their minor children who were detained at the time suit was filed in the two immigrant detention centers in Texas that are

5

licensed under the DFPS rule. Detainee Plaintiffs allege that the licensure of the facilities allowed the children to be detained for longer periods of time and to sleep in bedrooms with unrelated adults, which violates the children's privacy rights and exposes them to the risk of sexual assault.[3] This risk of harm is not speculative or hypothetical. One mother testified at a preliminary hearing that when she and her 12-year-old daughter were detained at one of the facilities, an adult woman had touched "her [daughter] on her private parts." Additionally, there was expert testimony admitted at the hearing tending to show that the negative psychological effects of detention on children are severe and that the negative effects increase in severity the longer that children are detained. I would conclude on this record that the Detainee Plaintiffs sufficiently alleged a concrete and particularized injury to the minor children who were detained at the facilities. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 155 (2010) (concluding that "significant risk" of injury from agency action, even if injury did not occur, was "sufficiently concrete to satisfy the injury-in-fact prong of the constitutional standing analysis"); *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 594 (Tex. 2016) ("The law has recognized numerous types of legal injuries, including injuries to a person's . . . right to privacy . . . ."); *see also Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex. 1973) ("Damages for mental suffering are recoverable without the necessity of showing actual physical injury in a case of

---

[3] The Court concluded that the text of the rule "does not allow a minor to share a bedroom with an *unrelated* adult." *Texas Dep't of Family & Protective Servs. v. Grassroots Leadership, Inc.*, No. 03-18-00261-CV, 2018 Tex. App. LEXIS 9643, at *15–16 (Tex. App.—Austin Nov. 28, 2018, no pet. h.) (mem. op.) (emphasis in original). I disagree. The text of the rule expressly provides that an FRC "is not required to comply" with "the limitation on a child sharing a bedroom with an adult . . . if the bedroom is being shared in order to allow a child to remain with the child's parent or other family member." 26 Tex. Admin. Code § 748.7(c)(2). In other words, so long as the child's parent "or other family member" shares the bedroom with the child, unrelated adults may also sleep in the same bedroom.

6

willful invasion of the right of privacy because the injury is essentially mental and subjective, not actual harm done to the plaintiff's body.").

I would also conclude that the injury is "fairly traceable" to the FRC rule and Defendants. The Court concludes that it is not, reasoning that "the length of detention is traceable to federal immigration policy and the *Flores* Settlement Agreement's requirement that state facilities detaining minors be licensed." *Grassroots Leadership, Inc.*, 2018 Tex. App. LEXIS 9643, at *16. However, the Court's conclusion is contrary to both United States and Texas Supreme Court precedent recognizing that an injury can have multiple causes and that an injury is traceable to a party so long as the party "contributed" to the injury in some way. *See, e.g.*, *Massachusetts v. E.P.A.*, 549 U.S. 497, 523 (2007) (concluding that agency contributed to state's injury from global warming because of agency's failure to regulate greenhouse gases); *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997) (concluding that agency's "determinative or coercive effect upon the action of someone else" contributed to plaintiff's injury); *Heckman*, 369 S.W.3d at 157 (concluding that plaintiff's injury from state law on indigent defendants could be traceable to Williamson County because county was responsible for implementing state law "within its borders" and therefore contributed to plaintiff's injury).

In this case, although ICE ultimately decides the length of detention, ICE is constrained by the *Flores* settlement, which restricts the length of time that immigrant children may be detained in unlicensed facilities. However, those restrictions do not apply if ICE detains children in facilities licensed by DFPS. Thus, the FRC Rule and DFPS's promulgation of it "alters the legal regime to which [ICE] is subject," *see Bennett*, 520 U.S. at 168–69, and enables ICE to detain children for longer periods of time at the DFPS-licensed facilities. Accordingly, the Detainee Plaintiffs' injuries are "fairly traceable" to DFPS.

7

Finally, I would conclude that the injury is likely to be redressed by the requested relief. The requested relief is the invalidation of the DFPS rule that allows the children to be detained for a prolonged period of time in conditions that violate their privacy rights and endanger their safety. Accordingly, the invalidation of the rule would restore the legal protections afforded to the minor children that existed before DFPS adopted the rule, including the strict limitations under *Flores* on the amount of time that they may be detained in the Texas facilities and the prohibition on children sleeping in the same bedrooms with unrelated adults in those facilities.[4] *See Flores v. Sessions*, 394 F. Supp. 3d 1041, 1070–71 (C.D. Cal. 2017); *see also* 26 Tex. Admin Code §§ 748.3357, .3361, .3363.

For these reasons, I would grant Plaintiffs' motion for en banc reconsideration, conclude that the Detainee Plaintiffs have standing to assert their claims, and proceed to consider the merits of their challenge to the validity of the DFPS rule. Because the Court does not, I respectfully dissent.

---

[4] In their briefs on original submission and in their responses to the motion for en banc reconsideration, Defendants also argued that the case was moot because the Detainee Plaintiffs had been released from confinement at the time the district court entered its judgment. This Court did not address this issue in its opinion because of its resolution of the standing issue. *See Grassroots Leadership, Inc.*, 2018 Tex. App. LEXIS 9643, at *13 n.5. Without going into unnecessary detail here, *see* Tex. R. App. P. 47.1, I would conclude that, as a result of the length of time that the Detainee Plaintiffs were confined and the fact that they could be re-detained at the same facilities in the future, their claims satisfy the "capable of repetition yet evading review" exception to the mootness doctrine. *See Sosna v. Iowa*, 419 U.S. 393, 401–02 (1975); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 227–28 (3d Cir. 2011).

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Goodwin, Baker, Triana, Kelly, and Smith

Dissenting Opinion to Denial of En Banc Reconsideration
  Joined by Justices Kelly and Smith

Filed:   December 5, 2019